ST. LOUIS & S. F. R. CO. v. SUMMERS et al.

(Circuit Court of Appeals, Eighth Circuit. October 11, 1909.)

No. 2,982.

1. RAILROADS (§ 338*)—INJURY TO PERSONS AT CROSSINGS—GROUNDS OF LIA-
   BILITY.

   The rule is well settled that, notwithstanding such contributory negli-
   gence of a traveler in crossing railroad tracks as will preclude recovery
   for any primary negligence of the railroad company in operating its trains
   so as to cause his injury, he may still recover if, after actually discovering
   that he was in imminent peril, the railroad company by the exercise of
   ordinary care could have prevented his injury and failed to do so; but
   in such case some new act of negligence must arise to create the cause of
   action, and must be established by proof, unaided by the former acts,
   which have been excused by the traveler's contributory negligence.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099; Dec.
   Dig. § 338.*]

2. RAILROADS (§ 320*)—ACCIDENTS AT CROSSINGS—NEGLIGENCE.

   The fact alone that those in charge of a railroad train observe a person
   driving with a team toward a crossing ahead of the train is not sufficient
   to apprise them that he is in danger, or to charge them with negligence for
   not stopping the train; but they have the right to presume that the
   traveler will stop before reaching the crossing, as the law requires.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1016; Dec. Dig.
   § 320.*]

In Error to the Circuit Court of the United States for the Eastern
District of Oklahoma.

Action by Alfred Summers, special administrator of the estate of
Hattie Magar, deceased, and others, against the St. Louis & San Fran-
cisco Railroad Company. Judgment for plaintiffs, and defendant
brings error. Reversed.

A passenger train, operated by the defendant company and running east-
wardly at a rate of speed variously estimated at 10, 15, 25, and 30 miles an
hour through the town of Ada, in the Indian Territory, came into collision at
a street crossing with a team driven by David Magar, and he was killed. His
widow and minor children instituted this suit to recover damages. They
charged in their complaint that the railroad company was negligent in oper-
ating its train at an excessive rate of speed, in violating a speed ordinance of
the town, in failing to keep a proper lookout, in failing to stop the train before
it reached the crossing, and that as a result of these acts of negligence Magar
lost his life and they were damaged. The defendant denied the acts of negli-
gence, and pleaded contributory negligence as its defense. In the course of
the trial it became manifest that the plea of contributory negligence had been
sustained, and the trial court so instructed the jury, but submitted the cause
on the sole issue whether, notwithstanding the contributory negligence of Ma-
gar, the railroad company might, after discovering his peril, by the exercise of
ordinary care, have avoided a collision and prevented the death. Defendant
at the close of the plaintiffs' evidence moved for an instructed verdict in its
favor, on the ground that there was no substantial evidence to support a ver-
dict for plaintiffs on this issue. This motion was denied. Defendant reserved
proper exceptions to the ruling and declined to offer any testimony in its be-
half. A verdict and judgment in favor of plaintiffs followed, and defendant
now prosecutes error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

E. T. Miller (W. F. Evans, on the brief), for plaintiff in error.

Clinton A. Galbraith, Tom D. McKeown, and A. C. Cruce, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). The facts, we think, show that the trial court was right in holding that the decedent was guilty of such contributory negligence as precluded plaintiffs' recovery by reason of any of the primary acts of negligence complained of, even if they were established, and no complaint is made of that ruling by plaintiff.

This leaves for our consideration the sole question whether there was any evidence to support the finding necessarily made by the jury that defendant railroad company could, by the exercise of ordinary care, after discovering that the decedent was in a situation of peril and danger, have avoided injuring him. The rule is well settled that, notwithstanding such contributory negligence of a traveler in crossing a railroad track as precludes recovery for the primary negligence of the railroad company in operating its train so as to bring about a collision with him, yet another and different cause of action arises in favor of the traveler if for any reason he is exposed to imminent peril and danger, and the railroad company, after actually discovering that condition, could, by the exercise of ordinary care, have stopped its train, or otherwise have avoided injuring him, and failed to do so. Chunn v. City & Suburban Railway, 207 U. S. 302, 28 Sup. Ct. 63, 52 L. Ed. 219; Denver City Tramway Co. v. Cobb, 164 Fed. 41, 90 C. C. A. 459. But in the application of this rule care must be taken to avoid undermining the rule of contributory negligence. Such negligence of the traveler in law fully exonerates the railroad company from the consequences of its original negligence, and some new and subsequent act of negligence must arise to create a cause of action; and this new or secondary act must be established by proof, unaided by the former acts, which have been excused by the traveler's contributory negligence.

Let us therefore inquire whether the servants of the railroad company had actual knowledge of the peril of the decedent, and whether with that knowledge they exercised reasonable care to avoid injuring him. The decedent, at the time he was killed, was engaged in hauling freight at or near the depot in Ada. He was driving a two-horse team southwardly along Townsend avenue, had just driven across one track, called the "mill track," 157 feet north of the main track, and another track, called the "house track," 50 feet north of the main track; and, as his horses reached the main track, an east-bound passenger train struck them, and he was thrown from his wagon, receiving injuries from which he died. There were five witnesses to the accident. Four of them stated that the decedent drove his freight wagon slowly across the mill track and house track, and towards the main track, looking generally in a southern or southeastern direction towards a switch engine, which was standing still on a switch track running south

and parallel with the main track. One witness stated that Magar was trying to hold his horses down, which, he says, were "kind of frightened" at the engine over on the switch track; but, when pressed to tell what Magar did, said:

"I disremember exactly, only he kind of made a haul like this (indicating) on his lines."

This evidence, and such evidence as this, is too vague and uncertain, especially when taken with that of the four other witnesses to the accident, which give no such account, to establish any state of peril on the part of Magar which would be reasonably observable by the engineer in charge of the train.

But it is argued that the engineer sounded three or four short whistles when between 300 and 350 feet of the crossing, and that a man on the side of the engine usually occupied by the fireman was seen, at some undisclosed distance from the crossing, to wave his hand out of the window. These facts, together with the fact that the engineer could have seen the crossing, and have seen Magar approaching, a sufficient time to enable him to stop his train before reaching the crossing, are relied on as proof of actual knowledge and appreciation of Magar's danger by the engineer; but they are clearly insufficient for that purpose. There is no showing why the short whistles were sounded, and certainly none that they were sounded because of Magar's danger. Common experience suggests that they were most likely the usual and customary signals given by engineers in charge of railroad trains at the approach of crossings. The waving of the hand from the fireman's window might have been for many purposes other than a recognition of Magar's danger. It may be that the engineer might have seen, and should be presumed to have seen, Magar approaching the main track; but this would constitute no evidence that his peril was appreciated. Common observation and experience teach that men engaged in hauling freight about railroad stations frequently approach close to the tracks with their teams and stand there while trains pass near them. Engineers in charge of trains must be presumed to be familiar with this practice, and to operate their trains in the light of it. It would constitute a serious embarrassment to traffic, if engineers should be required to stop or slow up upon seeing the approach of a wagon to the tracks. They have a right to presume that the drivers will observe the precaution which the law imposes upon them as a duty, and keep off the tracks on the approach of trains.

In the recent case of Illinois Cent. R. Co. v. Ackerman, 144 Fed. 959, 76 C. C. A. 13, we had before us a case similar to this. We there held that the men in charge of a train were not obliged to anticipate the negligence of a traveler. We said:

"They could very well have assumed either that he [the traveler] knew of the approach of the cars and intended to stop at the customary safe distance, or that he would look when near the track and then stop before going upon it."

That case controls this.

The judgment must be reversed, and the cause remanded for a new trial in harmony with the views herein expressed. It is so ordered.