LITTLE ROCK RY. & ELECTRIC CO. v. BILLINGS.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1911.)

No. 3,439.

1. STREET RAILROADS (§ 103*)—INJURY TO PERSON ON TRACK—EFFECT OF CONTRIBUTORY NEGLIGENCE.

Where a plaintiff, who was struck and injured by an electric car while walking toward it on the track, was clearly chargeable with contributory negligence, he cannot recover from the street railway company for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

injury. without proof that those in charge of the car, after having actual knowledge of his peril, might have avoided his injury by the exercise of ordinary care.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 219; Dec. Dig. § 103.*]

2. STREET RAILROADS (§ 103*)—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

Plaintiff was struck and injured by a street car at night, while walking on the track directly toward the car, which had a headlight burning. The motorman saw him when some distance away, but did not attempt to stop the car, which was running at a speed of 8 or 10 miles an hour, until it was within some 20 feet of plaintiff, when it was too late. Plaintiff was in fact very much intoxicated, but the motorman and passengers who saw him approaching all testified that there was nothing in his walk to indicate it. The street was being repaired, and a watchman was employed to see that the danger lights were kept burning, and the motorman testified that he supposed plaintiff to be such watchman when he saw him on the track. *Held*, on the evidence, that the motorman had the right to presume, until he knew the contrary, that plaintiff was in possession of his faculties, and would step off the track, and that he was not chargeable with negligence in not stopping sooner which would render the company liable for the injury notwithstanding plaintiff's negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 219; Dec. Dig. § 103.*]

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Action at law by F. N. Billings against the Little Rock Railway & Electric Company. Judgment for plaintiff, and defendant brings error. Reversed.

D. H. Cantrell and George B. Rose (U. M. Rose, W. E. Hemingway, and J. F. Loughborough, on the brief), for plaintiff in error.

Frank Pace and T. M. Seawel (Jeff Davis, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This is the second appearance of this case in this court. 173 Fed. 903, 98 C. C. A. 467. The action is one at law to recover damages for personal injuries. The defendant in error, hereafter called the plaintiff, was a lineman, and for some time prior to the date of the injury, of which he complains, had been in the employ of the Rock Island Railway Company in the state of Louisiana, assisting in the work of constructing a telegraph line. On the 23d of November, 1907, he returned to Little Rock, Ark., for the purpose of getting his pay. The pay checks had not been received from Chicago at the time he arrived, and he was, for that reason, delayed a day in Little Rock. About 5 o'clock in the afternoon, in company with a man named Oldfather, his foreman in telegraph line work, and another man by the name of Thompson, he visited a saloon, where they had several drinks, remaining there until about 7 o'clock, when they went

out to supper. After supper they returned to the saloon, and again commenced drinking, remaining there, as the record shows, until about 11 or 11:30 o'clock that night, when Oldfather and the plaintiff left the saloon and proceeded down the street to the corner of Main and Markham streets, where they parted, Oldfather returning to the supply room at the Rock Island depot. About 1:30 o'clock on the following morning, November 24th, the plaintiff was walking east along the street car track of the plaintiff in error, hereafter called the defendant, on Markham street, when he was struck by an electric car running west, knocked down, and his left leg was so crushed that amputation became necessary.

At the point where the plaintiff was injured there was a double track, and the street was at the time being paved with brick. The paving had been completed between the curb and the south rail of the south track, and between the north rail of the south track and the south rail of the north track, and between the curb and the north rail of the north track. The paving between the rails had not been finished, and red lights had been placed at different places along that part of the street where the paving had not been completed, as a warning to travelers thereon of the unsafe condition of the street. The car was equipped with an electric headlight, burning brightly, and the evidence shows it was being operated at a speed of from eight to ten miles an hour. That the plaintiff was intoxicated, although not to an extent to be discernible in his walk, is clearly established; but, having voluntarily brought on this condition, he is not excused in the doing of an act which would have constituted negligence if he had been sober. At the former hearing of this case in this court the court said:

"The undisputed evidence shows plaintiff was intoxicated when the injury occurred. to. him," and "this state of intoxication was brought by plaintiff on himself by his voluntary act. He was, therefore, chargeable with the result of his acts, deemed, by the law to constitute contributory negligence, in the same degree and to the same extent as though he had been and remained duly sober. McKillop v. Duluth St. Ry. Co., 53 Minn. 532, 55 N. W. 739; Rollestone v. T. Cassirer & Co., 3 Ga. App. 161, 59 S. E. 442; Keeshan v Elgin Traction Co., 229 Ill. 533, 82 N. E. 360; Railway v. Wilkerson, 46 Ark. 513. * * * Therefore, in so far as plaintiff alone is concerned, his conduct in coming and remaining on the track of defendant at the time, in the manner, and at the place he did must be viewed in the same light as though he had not intoxicated himself, * * * and his pleading and proof of voluntary intoxication in this case will not avail to excuse him in the doing of any act which would have constituted negligence on his part, had he remained sober. Viewed in this light, the act of plaintiff in coming on the track of the defendant in front of an approaching car, burning a bright electric headlight, the view of which was entirely unobstructed, and which he saw, or could have seen, had he looked, and his remaining on the track, walking toward the car, until he was struck and injured, undeniably constitutes such gross contributory negligence on the part of plaintiff as will bar a recovery in this case, unless there is in the case ground for the application of the qualification of the rule of contributory negligence sometimes termed the doctrine of 'last clear chance.'"—citing Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, and other cases.

[1] The qualification of the rule that contributory negligence on the part of the plaintiff will bar a recovery is stated by Judge Adams in

the case of St. Louis & S. F. R. Co. v. Summers et al., 173 Fed. 358, 97 C. C. A. 328, as follows:

"The rule is well settled that, notwithstanding such contributory negligence of a traveler in crossing a railroad track as precludes recovery for the primary negligence of the railroad company in operating its train so as to bring about a collision with him, yet another and different cause of action arises in favor of the traveler, if for any reason he is exposed to imminent peril and danger, and the railroad company, after actually discovering that condition, could by the exercise of ordinary care have stopped its train, or otherwise have avoided injuring him, and failed to do so. Chunn v. City & Suburban Railway, 207 U. S. 303, 28 Sup. Ct. 63, 52 L. Ed. 219; Denver City Tramway Co. v. Cobb, 164 Fed. 41, 90 C. C. A. 459. But in the application of this rule care must be taken to avoid undermining the rule of contributory negligence. Such negligence of the traveler in law fully exonerates the railroad company from the consequences of its original negligence, and some new and subsequent act of negligence must arise to create a cause of action; and this new or secondary act must be established by proof, unaided by the former acts, which have been excused by the traveler's contributory negligence. Let us, therefore, inquire whether the servants of the railroad company had actual knowledge of the peril of the decedent, and whether with that knowledge they exercised reasonable care to avoid injuring him."

The same rule was announced by Judge Hook in Illinois Central R. R. Co. v. Nelson, 173 Fed. 915, 97 C. C. A. 331.

[2] The plaintiff testified that he did not remember anything that occurred after he parted with Oldfather, which he thought was about 10 o'clock, but which Oldfather testified was between 11 and 11:30 o'clock, until he woke up in the hospital the following morning.

F. A. Jones, a witness for the plaintiff, testified that he was a passenger on the street car; that when the car stopped, at the time the plaintiff was injured, he, with others, got out of the car and went around to the side, where they were taking the plaintiff out from under the car, and in response to the question, "State to the jury if anything was said there by the motorman," he answered:

"All I remember of him saying was he saw the party on the track, but thought he would get out of the way. He thought he was drunk. I think he made that remark. He said he thought he would get out of the way. That's what I heard him say."

Another witness, a traveling man by the name of Alexander, testified that he was a passenger on the car and was sitting near the front window; that the seats ran lengthwise of the car on each side; that he was looking out of the front window when he first observed the plaintiff; that at that time he was between a block and half a block distant from the car, walking between the rails and in an easterly direction towards the car. He further testified that he noticed that he was bareheaded, and that when within 20 or 30 feet of the plaintiff his view was obstructed by the fender or dashboard around the front platform of the car; that about the time the plaintiff passed out of his view the motorman made an effort to stop quickly, "the car began to stop and stopped very suddenly," and he did not see the plaintiff again until after he had been taken out from under the car. He also testified that the plaintiff, as he walked up the track, was "walking perfectly straight and upright, straight towards the car"; that he saw no evidences from his movements or conduct that would indicate intoxication.

Mr. Estes, another passenger on the car, testified that he saw the man walking down the track, that he saw no evidence of intoxication, but that he walked in the ordinary way.

The motorman testified that he first saw the plaintiff at the northwest corner of Markham and Sherman streets, about 200 or 230 feet distant from the car; that he noticed the plaintiff leave the sidewalk and start diagonally across Markham street; that he proceeded in that direction until he had crossed the north track, when he turned east between the two tracks and walked in the direction of the car, and that when he had approached to within about 20 feet of the car the plaintiff stepped back on the north track; that the motorman then reversed his power, applied the brake, and used every means at hand to stop the car, but was unable to do so before it struck the plaintiff. He testified, as did the other three witnesses, that there was nothing in the plaintiff's appearance to indicate intoxication, but that he walked like a sober person would walk; that he did not notice he was without a hat until he stepped back on the north track in front of the headlight, and from the fact that he attempted to cross the track again he thought it was the night watchman, whose duty it was to keep the red lights in order.

The night watchman testified that it was his duty to keep the red lights burning at the places where the paving had not been completed, and that these lights were located at different places along the track, some of them on one side of the track and some on the other; that in performing his duty he frequently walked on the ties between the rails from one light to another, where they were not far apart.

The car was 29 feet and 5 inches in length, and the testimony of several witnesses, and the photographs offered in evidence, show that it was what is known as a vestibule car, with a glass vestibule around the platform, and that Mr. Alexander was mistaken when he testified that it was an open car, without a vestibule. The evidence further shows that a car going at the rate of 8 or 10 miles an hour could not be stopped by reversing the current and using the brake short of about 30 or 35 feet.

The only testimony that tends to bring home to the motorman knowledge that the plaintiff was intoxicated is the testimony of the witness Jones, and this evidence is altogether too vague and uncertain, especially when taken with the evidence of the several witnesses, including the motorman, who saw the plaintiff approaching the car, who all testified he was walking upright and there was nothing in his movements or conduct to indicate intoxication or other disability, which was the only means possible open to the motorman by which he could determine the man's condition.

After a careful and studious examination of the entire record from the standpoint of the plaintiff, we are led to the conclusion that he has not brought his case within the rule authorizing a recovery notwithstanding his own negligence. The witnesses to the accident all agree that as the plaintiff approached the car there was nothing, in his manner of walk or otherwise, to indicate that he was not in possession of all of his faculties, and the motorman had the right to

presume, until he knew the contrary to be true, that he would step aside and let the car pass. The testimony all shows that after discovering the man's peril the motorman used every means at hand to stop the car. We think the defendant's motion for a directed verdict should have been granted.

The judgment is reversed, and the case remanded for a new trial.