DICKSON v. CHATTANOOGA RY. & LIGHT CO.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1916.)

No. 2824.

1. RAILROADS ⬡338—STREET RAILROADS ⬡103(2)—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE.

One who is injured by a railroad train at a highway crossing, or by a street car in a street, may recover, notwithstanding his preceding contributory negligence, if he is using the street or highway for a proper and legitimate purpose, and his negligence has terminated, and the operators of the engine or street car, by the exercise of reasonable care and diligence, could have discovered his peril in time to avoid and prevent the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099; Dec. Dig. ⬡338; Street Railroads, Cent. Dig. § 219; Dec. Dig. ⬡103(2).]

2. STREET RAILROADS ⬡83—INJURIES TO TRESPASSERS—DEGREE OF CARE REQUIRED.

One who makes an improper use of a street or railroad track, so as to become a trespasser, cannot recover for injuries received, unless the operators of the train or street car, by the exercise of reasonable care and diligence after the discovery of his peril, might have avoided the accident.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 179, 180; Dec. Dig. ⬡83.]

3. STREET RAILROADS ⬡83—INJURIES TO PERSON ON TRACK—TRESPASSER—INTOXICATION.

One who had voluntarily become so intoxicated as to be unconscious, and had then lain down on a street car track, is a trespasser, since voluntary intoxication is no excuse for wrongdoing, and cannot recover unless the operators of the car could have avoided the accident after discovering his peril.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 179, 180; Dec. Dig. ⬡83.]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by Robert L. Dickson against the Chattanooga Railway & Light Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. W. Thompson, of Chattanooga, Tenn., for plaintiff in error.

J. E. Brown, of Chattanooga, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

SESSIONS, District Judge. On May 27, 1913, plaintiff went from his home in Arkansas to Chattanooga, Tenn., to attend a Confederate reunion. During the day he became intoxicated to such an extent that after 9 or 10 o'clock in the evening he was unconscious of his surroundings and actions. About 1 o'clock the next morning, while in a drunken stupor, he was lying across the railway track in a public street of Chattanooga when he was struck by one of defendant's street cars and seriously injured. The street where the accident occurred was in a thickly populated part of the city, and was used by many people and

vehicles in the daytime, but upon that occasion, as was usually the case at that early hour in the morning, was practically deserted. No one saw plaintiff go upon the railway track, and there was no testimony tending to show when he lay down in the street. No eyewitness to the collision was found or called, except the motorman.

After denying defendant's request for a directed verdict in its favor, the trial judge submitted the case to the jury upon the theory that the defendant could be held liable only in case its motorman was guilty of actionable negligence after he actually discovered plaintiff in a position of peril. The issue presented in the lower court and here is sharply defined by one of plaintiff's requests to charge, which was refused, and by the general instructions given to the jury. The request which was refused is as follows:

"Plaintiff is entitled to recover if defendant, through its motorman, failed to exercise ordinary care and caution to discover plaintiff and his perilous position on the track, *provided* the weight of the evidence shows that by the exercise of ordinary care and caution such motorman might have discovered plaintiff and his perilous position and thereby have avoided the accident."

The following excerpt from the charge fairly represents and typifies the instructions which were given:

"The general public has a right in the streets of the city; it has a right to use the streets of the city as a public highway, but that does not carry with it the right to use the tracks as the plaintiff was using them. He was not using the track as a highway, but he was using it to lie down upon—which is an unauthorized use—and not using it as a highway. I charge you that under the undisputed facts, the plaintiff using that track in this way, there is no liability in this case unless the greater weight of the evidence, the greater weight of all the evidence, shows that the motorman of the defendant's car failed to take due care to prevent the accident and injury to this plaintiff after he actually discovered the plaintiff on the track ahead of the car and could tell or had reason to suspect that it was a human being on the track in a position of danger. A street railway company is required by law to keep a lookout for people liable to use the highway for lawful purposes. It is not required by law to keep a lookout for people that are using the track as a bed, as this plaintiff practically was doing, and even if you should be of the opinion that the motorman could have seen the man further than he did, that would not carry any liability on the part of the defendant, as it owed him no duty to keep a lookout when he was using the track in this manner."

[1] If plaintiff had been making a proper and rightful use of the street at the time of the accident, and his own contributory negligence had not continued until he was injured, he would have been entitled to the instruction which he requested, and which was refused. It is well settled that one who is injured by a railroad train at a highway crossing, or by a street car in a street, may recover for such injury, notwithstanding his own initial or preceding contributory negligence in exposing himself to danger, provided he is using the street or highway at the time for a proper and legitimate purpose and his negligence has terminated, and provided, further, that the driver of the engine or street car, by the exercise of reasonable care and diligence, could have discovered his peril in time to avoid and prevent the accident. Robinson v. Louisville Ry. Co. (C. C. A. 6) 112 Fed. 484, 50 C. C. A. 357; Gilbert v. Erie R. Co. (C. C. A. 6) 97 Fed. 747, 38 C. C. A. 408; Toledo Traction Co. v. Cameron (C. C. A. 6) 137 Fed. 48–68, 69 C. C. A. 28; Tutt v. Illinois Cent. R. Co. (C. C. A. 6) 104 Fed. 741, 44

C. C. A. 320; Baltimore & Ohio R. Co. v. Anderson (C. C. A. 6) 85
Fed. 413, 29 C. C. A. 235; Illinois Central R. Co. v. O'Neill (C. C.
A. 5) 177 Fed. 328, 100 C. C. A. 658.

[2] On the other hand, it is equally well settled that one who makes
such an improper, wrongful, or unlawful use of a street, or railroad
track, as to become a trespasser thereon, and, in so doing, places him-
self in a position where he is likely to come into collision with a pass-
ing train or car, cannot recover for injuries so received, unless those in
charge of the train or street car, by the exercise of reasonable care and
diligence after the discovery of his peril, might have avoided the acci-
dent. Newport News & M. V. Co. v. Howe (C. C. A. 6) 52 Fed. 362,
3 C. C. A. 121; Baltimore & Ohio R. Co. v. Hellenthal (C. C. A. 6)
88 Fed. 116, 31 C. C. A. 414; Kansas City, Ft. S. & M. R. Co. v. Cook
(C. C. A. 6) 66 Fed. 115, 13 C. C. A. 364, 28 L. R. A. 181; New York,
N. H. & H. R. Co. v. Kelly (C. C. A. 2) 93 Fed. 745, 35 C. C. A. 571;
Denver City Tramway Co. v. Cobb (C. C. A. 8) 164 Fed. 41–43, 90 C.
C. A. 459; Little Rock Ry. & Electric Co. v. Billings (C. C. A. 8) 173
Fed. 903, 98 C. C. A. 467, 31 L. R. A. (N. S.) 1031, 19 Ann. Cas. 1173,
and 187 Fed. 960, 110 C. C. A. 80; Chunn v. City & Suburban Railway
of Washington, 207 U. S. 302–309, 28 Sup. Ct. 63, 52 L. Ed. 219; St.
Louis & S. F. R. Co. v. Summers (C. C. A. 8) 173 Fed. 358, 97 C. C.
A. 328; Iowa Cent. Ry. Co. v. Walker (C. C. A. 8) 203 Fed. 685, 121
C. C. A. 579; Dunworth v. Grand Trunk Western Ry. Co. (C. C. A.
7) 127 Fed. 307, 62 C. C. A. 225.

[3] City streets are reserved and dedicated to the public for the
primary purpose of travel thereon, either on foot or in vehicles, and,
in the exercise and enjoyment of the rights so conferred, every person
is entitled to the fullest measure of protection which the law affords.
But, in this instance, plaintiff was not using the street for that or any
other legitimate purpose. It goes without saying that to lie down upon
the street in front of an approaching car or upon a track where cars
are expected to and must run is an act of gross negligence. Upon rea-
son and authority, it is undeniable that, if plaintiff, while sober and in
the possession of all his faculties, had voluntarily lain down upon the
street railroad track and had consciously remained in that position
until he was struck by the car, or had gone to sleep after knowingly
putting himself in the place of danger, his contributory negligence
would have continued, and would have precluded recovery for the in-
juries which he sustained. Does his intoxication change the rule, and
relieve him from the consequences of his own wrongful conduct? "The
condition produced by intoxication, being voluntary, does not relieve
the person injured from the necessity of exercising ordinary care to
avoid injury required under like circumstances of a sober man." 29
Cyc. 534, and cases there cited. In a case similar to the present one in
many particulars (Little Rock Railway & Electric Co. v. Billings, 173
Fed. 903, 98 C. C. A. 467, 31 L. R. A. [N. S.] 1031, 19 Ann. Cas. 1173,
and 187 Fed. 960, 110 C. C. A. 80) the Circuit Court of Appeals of the
Eighth Circuit thus clearly and tersely stated the general rule upon this
subject:

"The undisputed evidence shows plaintiff was intoxicated when the injury
occurred to him. From the fact that he was an electrical worker employed

by the Rock Island Railway Company as lineman, and from all the other facts and circumstances in the case, it is undisputed this state of intoxication was brought by plaintiff on himself by his voluntary act. He was therefore chargeable with the result of his acts, deemed by the law to constitute contributory negligence, in the same degree and to the same extent as though he had been and remained duly sober. McKillop v. Duluth St. Ry. Co., 53 Minn. 532, 55 N. W. 739; Rollestone v. T. Cassirer & Co., 3 Ga. App. 161, 59 S. E. 442; Keeshan v. Elgin Traction Co., 229 Ill. 533, 82 N. E. 360; Railway v. Wilkerson, 46 Ark. 513. While one who, from the excessive use of intoxicating liquors, brings on himself such a condition of permanent imbecility or idiocy as to thereafter render his acts done wholly involuntary, may be regarded in law with the same favor as he who by the operation of natural laws is born or becomes an idiot or a lunatic, yet men who voluntarily 'put an enemy in their mouths to steal away their brains' must and will in law be held to the same high degree of care for their personal safety as though they had not voluntarily made themselves drunk. In other words, a man will not be permitted to plead and prove his own voluntary self-intoxication to his profit. Therefore, in so far as plaintiff alone is concerned, his conduct in coming and remaining on the track of defendant at the time, in the manner, and at the place he did must be viewed in the same light as though he had not intoxicated himself but had remained duly sober; and his pleading and proof of voluntary intoxication in this case will not avail to excuse him in the doing of any act which would have constituted negligence on his part, had he remained sober."

In Winfrey v. Missouri, K. & T. Ry. Co. (C. C. A. 8) 194 Fed. 808–815, 114 C. C. A. 218, the same court, speaking of a drunken man who had alighted from a train and instead of leaving the tracks with other passengers had remained thereon until, 20 minutes later, he was struck by another train, said:

"A drunken man must be held to the consequences of that condition. Otherwise a premium is put upon misbehavior. If he by voluntarily rendering himself unable to care for himself, can invite injury and recover from another ignorant of his condition therefor, notwithstanding his own direct contribution to the cause of it, the sober and careful man is put to a disadvantage in such cases. This seems and is unreasonable."

In the same case the court quotes with approval the following language found in Beach on Contributory Negligence:

"Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication cum periculis."

It does not appear that in either of the cases above cited the injured person was so drunk as to be completely unconscious and insensible. Some courts have adopted what is termed the "humanitarian" doctrine that the negligence of an intoxicated person culminates and terminates with insensibility and unconsciousness, and, in consequence, have held that one so intoxicated is not guilty of continuing his contributory negligence, so as to preclude recovery for an injury attributable to the subsequent negligence of another. This doctrine necessarily recognizes degrees in intoxication, and hence in culpability, as measuring responsibility for one's own misconduct. Other courts, adhering to the long-established rule that voluntary intoxication, whatever its degree, does not excuse and does not relieve from the consequences of negligence, or even crime not involving conscious criminal intent, have repudiated this doctrine, and have refused to recognize any different standard

or measure of conduct for a drunken man, though unconscious, than for a sober man. Whatever may be the rule here or elsewhere when the question involved is merely one of negligence, and not wrongdoing in the nature of a trespass, this court, as pointed out by the trial judge in denying defendant's motion for a directed verdict, and as appears from its decisions, above cited, is committed to the doctrine that the employés of a railroad company, operating its trains and cars, owe no duty to a trespasser upon the railway tracks to keep a lookout for him, and that their only duty toward him is to exercise due care not to injure him after the discovery of his peril.

Was plaintiff a trespasser upon defendant's railway tracks, or was his position upon the tracks at the time of his injury so analogous to that of a trespasser that the rules governing liability to the latter should be applied to him? No one will question that an intoxicated man, who wanders from the sidewalk of a public street upon adjoining private premises and lies down, is a trespasser, and continues to be a trespasser as long as he remains there, regardless of the degree of his intoxication. If a drunken man leaves the highway at a crossing, and while upon the railroad track lies down and goes to sleep, he is a trespasser, and his right to recover for injuries sustained while in that position is solely that of a trespasser. New York, N. H. & H. R. Co. v. Kelly (C. C. A. 2) 93 Fed. 745, 35 C. C. A. 571. A pedestrian upon a highway at a railroad crossing under some circumstances may be a trespasser. Kelly v. Michigan Central R. R. Co., 65 Mich. 186–191, 31 N. W. 904, 8 Am. St. Rep. 876. There is direct authority for holding that a drunken man who lies down in the street upon a street railway track is a trespasser. Scates v. Rapid Transit Co. (Tex. Civ. App.) 171 S. W. 503–506. The right to be upon a public street does not carry with it a license or privilege to use the street for purposes other than those fairly incidental to travel. The boundaries of the right are the limits of the privilege. One who exceeds the limits of, or abuses or misuses, his rightful privilege, and, in so doing, infringes or encroaches upon the property and property rights of another, is, to the extent of such infringement or encroachment, as much a trespasser as he would be if he were doing the same thing without license of any kind or character. A street railway company owns its tracks, though located in a street, and is entitled to operate its cars thereon without unlawful or wrongful obstruction, and without interference, except such as necessarily results and follows from the rightful and legitimate use of that portion of the street by the public. Upon plainest principles, the placing of an obstruction of any kind, whether a rock, a log of wood, or a human being, on a street railway track, violates the property rights of the owner thereof and is an act of trespass.

Upon the facts disclosed by this record, we find no error in the instructions to the jury, and the judgment of the lower court is affirmed.