LANDERS v. ERIE R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 19, 1917.)

No. 2945.

1. RAILROADS ⬤➳330(2)—CROSSING ACCIDENTS—GATES.

While the fact that gates intended to protect travelers at a railroad crossing were open relieves a traveler of the imperative duty to stop, look, and listen before going upon the tracks, and usually makes the question of his contributory negligence one for the jury, a traveler is, though the gates be open, obliged to continue to exercise the ordinary care a reasonably prudent man would for his self-protection.

2. RAILROADS ⬤➳330(2)—CROSSING ACCIDENTS—NEGLIGENCE.

Deceased, who followed two other travelers on foot, entered a railroad crossing at which he had an unobstructed view to the left down the west track for more than 500 feet when the gates were open. Before deceased and the others could pass, the gates were lowered, and the two pedestrians in front left the sidewalk and went diagonally north to pass between the gates at about the center of the street. Deceased followed them, being only a few feet behind, and was struck and killed by a switch engine approaching on the west track. Had he looked, deceased undoubtedly could have seen the engine, and the fact that he veered showed that he knew the gates had been closed. Held, that as the engine was equipped with lights, and all the bystanders heard it, deceased must be deemed guilty of negligence.

3. RAILROADS ⬤➳330(2)—CROSSING ACCIDENTS—NEGLIGENCE.

In such case, deceased cannot be deemed free from contributory negligence on the theory that the entire zone between the two gates was a place of danger, and that he was justified in going forward to get out of it, for the tracks were straight, and he could readily have seen the approaching engine and avoided it.

4. RAILROADS ⬤➳324(1)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

In such case, deceased could not be deemed free from contributory negligence on the ground that trains on the west track habitually came from a direction opposite that from which came the switch engine that ran down deceased.

5. RAILROADS ⬤➳346(3)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

In such case, where deceased attempted to pass so close in front of the engine that he did not have more than two seconds of time, the railroad company cannot be held liable because, after the accident, his shoe was found wedged between the edge of the crossing planking and the rail,

on the theory that the defect, which was in the street, not intended for pedestrians, constituted a trap in which deceased's foot caught, for, if his foot was caught and held, the interval of time between the catching and the fatal collision was so short that the railroad operatives could in no way have avoided it.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Action by Jennie Landers, administratrix, against the Erie Railroad Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Britton S. Johnson, of Kent, Ohio, and Timothy S. Hogan, of Columbus, Ohio, for plaintiff in error.

J. Paul Lamb, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Plaintiff in error was plaintiff below. Her intestate was killed by defendant's switch engine at a highway crossing in the village of Kent, Ohio. The trial court directed a verdict for defendant, on the ground of contributory negligence. Landers, the man killed, was under no contract relationship with the railroad.

The accident happened about 9 o'clock, p. m., on April 22d. Landers was on foot, going west. There were two north and south railroad tracks, constituting the double track of the main line. The crossing was protected on both sides by gates, and supplementary arms from these gates barred the sidewalk passage. Landers lived in town and was familiar with the situation. As Landers approached the crossing, there were obstructions to his view toward the south; but as he passed these obstructions, and came near the east rail of the east track, he had a clear view to the left down the west track for 500 feet. The switch engine which struck him approached on the west track from the south, running backward. A party of three undertook this crossing; Landers was a stranger to the other two, and was walking from 6 to 10 feet behind them. As they all approached and crossed the location of the east gate, that gate was open, and a street car had just come across from the west. Either then or just before, the west gates closed. They were certainly closed as early as the time when the two men ahead were approaching the west track and Landers was upon the east track. The two men left the sidewalk and went diagonally north, in order to pass between the west gates at about the center of the street. They saw the engine coming, knew that they had scant time to get across, and they did barely do so. Just as they were upon or entering upon the west track, they looked back and saw Landers following them on the same diagonal path and only a few feet behind them. After the engine passed, they did not see him, and investigation disclosed his body 30 or 40 feet north, where it had been dragged by the engine after he was hit.

[1] It is accepted by this court, as the rule of such a situation in Ohio, that open gates operate materially to lessen the degree of care otherwise incumbent upon persons about to cross a railroad; that there

is then, on the part of the traveler, no imperative duty to stop and look and listen before going upon the tracks, and that the question of his contributory negligence will usually be for the jury; but that he is, nevertheless, obliged to continue to exercise such ordinary care as a reasonably prudent man would do for his self-protection. Blount v. Railway (C. C. A. 6) 61 Fed. 375, 378, 9 C. C. A. 526; B. & O. R. R. v. Anderson (C. C. A. 6) 75 Fed. 811, 22 C. C. A. 415; Erie Co. v. Schultz (C. C. A. 6) 183 Fed. 673, 675, 676, 106 C. C. A. 23.

[2] The proper application of this rule does not cover circumstances, such as are here involved, far enough to prevent an inevitable inference of negligence. Not only was Landers on foot (an important matter as affecting both looking and listening), but before he came into the actual danger zone the west gate was lowered, and undoubtedly he saw it and started to go around. From that time on anything in the nature of an invitation to cross ceased, Landers had notice that something was coming, and if he stepped upon the west track without looking in both directions. his act would clearly be negligence. There is no escape from the conclusion that he did go upon the track, intending to cross it, and while the approaching engine was within a few feet; nor from the inference that, if he looked towards the south, he saw it. Plaintiff's witnesses state the distance of the engine from Landers, when he stepped on the track, as low as 4 feet, but to consider it 20 or 25 feet is to give the benefit of every doubt, and this means not more than two seconds of time. The night was not dark, the tender carried a light, and every one of the five or six bystanders, plaintiff's witnesses, saw the engine coming, from some distance away until the accident. All of them heard either the noise of its wheels or the bell ringing. We think all reasonable minds must agree, either that Landers did not look in this direction, or else that, if he did look, he misjudged the distance, and thought he could get across ahead of the engine. In either event and upon most familiar principles he was negligent.

[3] It is argued that the entire zone between the two gates is a place of danger, and that, since he entered this zone without fault on his part, he is not to be blamed for what he did in trying to get out of it. This proposition cannot be accepted broadly enough to reach this situation. It is easy to suggest circumstances where the closing of gates while the traveler was between them would excuse conduct on his part otherwise very negligent; but here the tracks were straight in both directions, there was no other engine passing, nor any distracting noise, a man on foot could see that nothing was approaching from either direction upon the east track, and could almost instantly step back and around or under the east gates, if they were then closed. These facts cannot furnish a sufficient excuse for going upon and trying to cross the west track without looking, or for deliberately hastening across so closely in front of the engine, if in fact he saw it coming.

[4] It is also said that trains on the west track customarily came from the north, and that Landers, therefore, would not naturally have expected anything from the south. This does not excuse, unless we go to the extent of saying that, for this reason, he was not bound to pay the slightest attention to the south, from which direction the engine was coming and was almost upon him; and this cannot be said.

[5] There was also evidence from which plaintiff claims the jury would have had a right to infer that, as he was crossing the track, Landers' foot was caught and held in a hole in the planking, which defect defendant had negligently allowed to continue. It appears that, in the central part of the highway crossing, there was planking between the rails; that, at one spot, the edge of the planking next to the rail had worn away so that for the length of a foot or two there was a distance of 3 or 4 inches between the rail and the plank, along the inside of the rail, and where there necessarily was some space for the travel of the wheel flange, and that, immediately after the accident, Landers' right shoe, unbuttoned, was found so forced into this depression that it was removed with difficulty. Whether this defect in the part of the crossing intended for vehicles could, under the evidence here, rightly be thought to imply negligence on the part of the railroad as against Landers, who had left the sidewalk and was going out around the end of the gate in the roadway, is not clear; but, in view of the meagerness of the testimony concerning its exact character, we prefer to assume that plaintiff is right in this contention, and also to assume—although this comes near to being only surmise—that Landers' shoe was caught in this hole before he was struck, rather than afterwards pressed in by the flange of the wheel. Based on these premises, plaintiff urges that the effect of Landers' contributory negligence is thereby obviated, or perhaps that there is afforded thereby some reason for doubting the existence of contributory negligence. We cannot see that either of these conclusions can be drawn from the premises. If the traveler starts across the track far enough ahead of the oncoming engine so that there may be reasonable doubt of his great carelessness, the fact that his foot becomes caught in a defect is of evidential force in disputing the inference of negligence otherwise tending to arise from his failure to get across successfully; but where, as here, his action in trying to cross would raise an indisputable presumption of negligence, if the path were smooth and perfect, that presumption cannot become disputable because the path turns out to be defective.

It is doubtless true that there are circumstances where the existence of a defect in the crossing, which caught a traveler who had negligently attempted to cross, and held him until he was hit, would serve to support a recovery; but this, it would seem, must be either because the engineer was not diligent in stopping after he saw the traveler's predicament (Dickson v. Chattanooga Ry. & Light Co., 237 Fed. 352, 150 C. C. A. 366), or because the holding, in what proved to be the trap, was long enough continued so that the contributory negligence in attempting to cross might be thought to have exhausted itself, and to have been superseded by defendant's existing and continued negligence in maintaining the trap, so that thus it might be said that the contributory negligence was no longer a concurrent cause. The circumstances of this case lend no support to this theory. If there were a catching and holding, they were practically only instantaneous. The result was only that which would have followed almost any kind of misstep. To say that defendant's maintenance of the defective crossing was a supervening or proximate cause, taking effect after the

contributory negligence had ceased to have its normal consequence, would be to substitute theories for facts.

The judgment must be affirmed.