## ILLINOIS CENT. R. CO. v. ACKERMAN.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1906.)

### No. 2,157.

1. RAILROADS—INJURY OF PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate drove an express wagon upon a street crossing over defendant's railroad in front of a string of freight cars which were being backed along a side track, and was struck by such cars and killed. He was well acquainted with the crossing, where there were six parallel tracks in quite constant use. The accident occurred in the daytime, and from any point within 50 feet from the tracks, he could have seen along them in the direction from which the cars were coming for 400 feet, yet he drove slowly and went upon the tracks without stopping. The cars were moving at a speed of from 5 to 12 miles an hour. *Held,* that conceding defendant's negligence in respect to the speed of the cars, and the absence of signals, deceased was guilty of negligence in failing to look or listen before driving on the crossing which directly contributed to his death and precluded a recovery therefor.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1043–1056.]

2. SAME—ANTICIPATING NEGLIGENCE OF PERSON INJURED—"LAST CHANCE" RULE.

The rule which holds a railroad company liable for the injury of a person on its tracks because of the failure of those in charge of its train to exercise due care to prevent such injury, notwithstanding the negligence of the person injured, applies only where such employés had reason to

know of such negligence and the danger therefrom in time to prevent the injury. It has no application to a case where the person injured deliberately drove upon the track at a crossing in the daytime immediately in front of moving cars which he should have seen in the exercise of ordinary care, those in charge of the cars being justified in supposing that he did see them, and would stop as was customary until they had passed, up to the time when he actually drove upon the track, and it was too late to stop them.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1096–1099.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Action by the administratrix to recover damages for the death of her intestate alleged to have been caused by the negligence of the railroad company. Trial to a jury followed by a verdict and judgment for the plaintiff.

W. J. Knight (J. M. Dickinson, on the brief), for plaintiff in error.

D. J. Lenehan (L. H. Hurd, on the brief), for defendant in error.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. There was substantial evidence of the negligence of the railroad company in respect of the speed of the cars and the absence of signals, and the verdict of the jury in favor of the plaintiff precludes further inquiry into that matter. But the negligence of the railroad company did not absolve the deceased from his duty to look and listen before venturing upon the track, and the evidence conclusively shows that by his failure to perform that duty he was guilty of negligence contributing directly to his death.

The employés of the railroad company were engaged in pushing seven freight cars southward toward a much travelled street in Dubuque, Iowa, crossing which were six railroad tracks operated as part of the main line and yards of the company. The engine was upon the north end of the string of cars and was moving backwards. There was a brakeman on the car next to the engine but none near the end of the cars nearest the crossing. No flagman was stationed at the crossing. The deceased was 23 years of age, intelligent, and in full possession of his faculties. He was and had been for more than a year in the service of Wells, Fargo & Co., as the driver of an express wagon. He was thoroughly familiar with the railroad crossing, was accustomed to drive over it several times each day, and knew of the frequent passage of trains and the movement of cars in switching. The horse attached to the wagon was tractable, gentle, and easily controlled. The accident occurred in the daytime. The deceased drove eastward upon the south side of the street and slowly approached the railroad tracks. At no time prior to the moment of collision was the horse moving at such speed as would have prevented the deceased from stopping him almost instantly. The hood of the wagon top projected about 12 inches beyond the driver's seat, and the side curtains were down, thus preventing the deceased and the brakeman next to the engine from seeing each other so long as they maintained

their respective positions. As the deceased neared the tracks there was to his right the passenger station of the railroad company and to his left, northward, in the direction from which the cars were approaching was a wide open space across which there was an unobstructed view for a long distance. A single illustration will suffice upon this subject. A look to the northward when the deceased was 50 feet from the point of collision on the second track, would have revealed to him the approaching cars at any point within more than 400 feet. No danger whatever would have menaced him had he exercised any fair degree of care for his own safety. The speed of the train was variously estimated at from 5 to 12 miles an hour. The brakeman and the fireman observed the wagon as it slowly approached the track upon which they were about to move, but supposed that the driver would drive up close and stop as was the custom. Instead of stopping, the deceased drove immediately in front of the approaching cars, he was thrown from the wagon under the wheels of the cars and received injuries that resulted in his death.

This would appear to present a case of negligence upon one side and such contributory negligence upon the other as precludes a recovery. But the plaintiff was permitted to recover in the trial court upon the theory that the employés of the railroad company, having perceived that the deceased was about to drive upon the track, and was not at the time using his senses of sight and hearing to discover his danger, did not then exercise reasonable and ordinary care to prevent the accident. In other words, the court announced the rule of law sometimes called the "last chance" doctrine which has been developed from the case of Davies v. Mann, 10 Mees. & W. 546, and the jury found that the facts justified its application.

We need not discuss this rule and its proper limitations nor the cases in which it has been applied, for we are clearly of the opinion that in no admissible view is it applicable to the case at bar. The evidence before the jury did not justify a finding that the employés of the railroad company perceived that the deceased was about to drive upon the track before the very moment he did so and then it was too late to avert a collision. One of the plaintiff's witnesses said that the horse was walking so slowly he thought the deceased was going to stop, and the fireman and brakeman testified that the expressmen were in the habit of driving up close to the track and then stopping until the cars passed by. It is true that they did not see the deceased because of the drawn curtains of the wagon top; but even so, the deceased without being observed by them could himself have seen more than two hundred feet of the string of approaching cars, and that would have been sufficient for his purpose. Nor was the deceased required to look and listen at any particular point in his journey toward the tracks. The duty imposed upon him by law would have been fully discharged had he looked and listened at any point sufficient for the purpose before actually venturing into danger. The men upon the train were not obliged under the circumstances to anticipate his negligence. They could very well have assumed either that he knew of the approach of the cars and intended to stop at the

customary safe distance or that he would look when near the track and then stop before going upon it. They did not know that he was inattentive and absent minded, nor did they know of his purpose to continue his onward course. He was not in a place of danger until it was too late to prevent the accident. The negligence of the employés of the railroad company and that of the deceased were concurrent and continuous down to the very moment of the collision, and there is no room for the contention that the negligence of the latter should be regarded as a known condition upon which the negligence of the former subsequently operated. The request of the railroad company for a directed verdict should therefore have been granted.

The judgment of the Circuit Court is reversed, and the cause remanded, with direction to grant a new trial.