ATCHISON, T. & S. F. RY. CO. v. TAYLOR.

(Circuit Court of Appeals, Eighth Circuit. . May 6, 1912.)

No. 3,611.

1. NEGLIGENCE (§ 83*)—CONTRIBUTORY NEGLIGENCE—LAST CHANCE RULE.
. What is known as the last chance rule in actions for negligence does not destroy or supplant the doctrine of contributory negligence, but is an exception or qualification which presupposes negligence of the defendant and contributory on the part of the person injured, and imposes liability if, after perceiving the dangerous position in which the latter has negligently placed himself, the injury might then have been avoided by the defendant by the exercise of reasonable care. It does not apply where there is no negligence of defendant occurring after that of the person injured or where the defendant does not discover his exposure to danger in time to prevent the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

2. RAILROADS (§ 282*)—OPERATION OF RAILROAD TRAINS—FLYING SWITCH.
The rule that the making of a flying switch on a railroad is negligence as a matter of law is not of universal application, but has reference to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

travelers on public roads and others rightfully crossing the track who are entitled to appropriate signals of approaching trains or cars, and in other cases whether such method of switching is negligent depends on the circumstances and the way the work is done.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910-923; Dec. Dig. § 282.*]

3. RAILROADS (§ 278*)—INJURY TO LICENSEE ON TRAIN—INJURY AVOIDABLE NOTWITHSTANDING CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate shipped a car of household goods and live stock on defendant's railroad under a contract which permitted him to accompany the shipment free of charge, but contained an agreement on his part to remain in the caboose while the train was in motion, and that he would not be on any freight car while switching was being done, and provided that defendant should not be liable for his injury while violating such conditions. He was riding in his car, however, when it reached its destination, and was shunted upon a siding, and was killed by its coming into violent collision with another car. Just before the switch was made, he was seen in the car by the conductor. The car was ridden by a brakeman, but, when he attempted to stop it, a bolt in the brake mechanism broke, and he lost control of it. The brake had been examined and tested by the conductor and brakeman just before the switch was made and found in apparently good order; the defect being one not readily discoverable. *Held* that, after the presence of deceased in the car was discovered, there was no negligence on the part of defendant which rendered it liable for his death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 891-900; Dec. Dig. § 278.*

Injuries to licensees on train, see note to Chamberlain v. Pierson, 31 C. C. A. 164.]

In Error to the Circuit Court of the United States for the Western District of Oklahoma.

Action at law by Charles E. Taylor against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

S. T. Bledsoe (J. R. Cottingham, George M. Green, and John Devereux, on the brief), for plaintiff in error.

H. B. Martin (A. F. Moss, Bayard T. Hainer, V. E. McInnis, and M. E. Turner, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This was an action by the next of kin of James E. Taylor, deceased, to recover damages for his death in a railroad accident. The plaintiff recovered judgment in the Circuit Court and the railway company sued out this writ of error.

Taylor shipped a car load of household effects, farming implements, and live stock from Nebraska to Bliss, Okl. At Kansas City, Mo., where the defendant company received the car, an emigrant outfit contract was executed permitting Taylor to accompany the shipment without charge. It recited that travel by freight trains or in freight cars was necessarily more dangerous than upon passenger trains, and contained agreements by Taylor that he would "remain in a safe place in the caboose attached to the cars while the train is in motion," that he would "not get on or be on any freight car while switching is be-

ing done at stations or other places," and that, if he was injured while violating those conditions, the company should not be liable. The train reached Bliss in the nighttime and Taylor, who was riding in the freight car in violation of his contract, was killed when the car was shunted to a siding by a flying or drop switch and violently collided with another car standing there. The contract was a valid one, and none of the trainmen were authorized to waive or modify its provisions.

[1] So far, it would appear that the case was a plain one for the company, but the plaintiff relies upon what is commonly termed the "last chance rule"; that is to say, that the employés of the company in charge of the train negligently made the switch and caused the accident with prior knowledge that Taylor was in the car and in a dangerous position. It is doubtful that the petition was framed to present this cause of action, but it contains an averment which, standing alone, would be sufficient, and as the trial proceeded in part at least along that line, and the trial court gave instructions upon it, the case of plaintiff will be regarded as being so founded. There is no other ground upon which plaintiff has any standing in court. This is practically conceded by counsel.

The limitations of the last chance rule have been quite often defined by this court. It does not supplant or destroy the doctrine of contributory negligence, but is an exception or qualification, and depends upon special and particular conditions which must be made to appear. It presupposes negligence of the defendant and contributory negligence on the part of the person injured and imposes liability if after perceiving the dangerous position in which the latter has negligently placed himself the injury might then have been avoided by the former by the exercise of reasonable care. It does not apply where there is no negligence of the defendant occurring after that of the person injured, or where the defendant does not discover his exposure to danger in time to prevent the accident. Illinois Central Railway Co. v. Ackerman, 76 C. C. A. 13, 144 Fed. 959; Denver City Tramway Co. v. Cobb, 90 C. C. A. 459, 164 Fed. 41; St. Louis & S. F. Railroad Co. v. Summers, 97 C. C. A. 328, 173 Fed. 358; Illinois Central Railway Co. v. Nelson, 97 C. C. A. 331, 173 Fed. 915. It must affirmatively be pleaded, if relied on. Hart, Adm'r, v. Railway, 196 Fed. 180, 115 C. C. A. —— (decided at the December term, 1911).

Taylor rode in the freight car from a point in Kansas to its destination, Bliss, Okl. He was accompanied by a brother who concealed himself from observation, and was unlawfully securing transportation. Before the flying switch was made, the sliding door of the car was opened about two feet, and Taylor stood upon some boxes with his head out of the opening. He remained in this position while the switch was being made. The collision with the car upon the siding caused the door to close and crush his head. It is not claimed by plaintiff that Taylor had permission to ride in the car, or that the trainmen knew he was there until just before the switching operation was begun. Whether they knew it then was contested at the trial. The only witness for plaintiff who said they knew was the brother who testified to a con-

versation between Taylor standing at the partly opened door and the conductor whom he identified as being upon the ground with his lantern. We regard this point as settled by the verdict of the jury, though there is much force in the contention of defendant based upon the denials of its witnesses and the unfavorable opportunity of the brother for seeing the things to which he testified. We therefore have Taylor in a dangerous position in the freight car in which he had contracted not to ride or be while switching was being done; also the knowledge of the conductor who controlled the movements of the train. The next inquiry is, Wherein was the company thereafter negligent? It cannot be doubted that the car after being drop switched to the siding went down rapidly and collided with another car with great violence.

[2] It has been held that the making of such a switch is negligence as matter of law, but that is with reference to travelers on public roads and others rightfully crossing the track who are entitled to appropriate signals of approaching trains or cars. Such a rule is not of universal application, nor does it apply here. In the practical operation of railroads there are conditions which make that method of breaking up a train or distributing cars entirely proper, if not necessary, and it is customarily followed. Whether its adoption in a case like this is negligence would depend upon circumstances and the way the work was done.

[3] In making a drop switch, the movement of the car after it leaves the engine and goes upon the siding is controlled by an ordinary hand brake operated by a brakeman who rides the car. In the present instance, a brakeman was on top of the car, but, when he attempted to apply the brake the bolt which passes through the brake staff and to which the chain is attached broke, the chain was detached, he lost control of the car, and the collision which caused the accident occurred. The evidence was undisputed that just before the drop switch was made the conductor and brakeman examined and tested the brake and found it apparently in good order; that the defect in the bolt was an old one and was in the part within the brake staff and therefore not discoverable by such inspection as it was practicable for them to give; also, that, had the bolt not broken and the chain become detached, the brakeman could have stopped the car and prevented the collision. If this was the proximate cause of the accident, Taylor was not relieved by the last chance rule of the consequences of his contributory negligence in voluntarily placing himself in a dangerous position in express violation of his contract; and, of course, what would have affected Taylor's right of recovery had he survived, likewise affects the right of the plaintiff, his next of kin. In Illinois Central R. Co. v. Nelson, supra, we said:

"A defect in mechanical appliances, existing before and continuing until after the injury, not susceptible of being rectified after the discovery of the danger carelessly incurred and before the injury is done, is not supervening negligence within the rule invoked. Were it otherwise, negligence on the part of others would have to be anticipated and provided for in adopting precautions to prevent accidents; but that is not in the measure of one's duty."

Though requested by the company, the court refused to instruct upon this principle of law. On the contrary, the jury were erroneously allowed to regard the defective appliance as an affirmative negligent factor within the last chance rule.

The judgment is reversed, and the cause is remanded for a new trial.