GORDON FIREPROOF WAREHOUSE & VAN CO. v. HINES, Director General of Railroads.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1921.)

No. 5611.

1. Railroads ⚫�ané327(2)—Auto-truck driver chargeable with contributory negligence.

The driver of an auto-truck eastward on a street with which he was familiar at a place, where it was crossed by a number of railroad tracks used for switching purposes ran into the first of three cars being pushed along the second track, which was 25 feet east of the first track, and was injured. No one engaged in moving the cars, which were moving at a speed of 4 to 6 miles an hour, had knowledge of the impending collision. In an action for the injury, it was testified that the bell on the engine was being rung and that the truck was going at a speed of about 15 miles an hour, and it was shown that from the point at which it crossed the first track the approaching cars could be seen for a distance of 200 to 300 feet. *Held*, that the driver was chargeable with contributory negligence as matter of law, whether he failed to look, or whether he looked and attempted to cross ahead of the cars.

2. Negligence ⚫➭98—Of auto-truck driver held not "slight negligence," as compared with railroad's negligence.

Negligence of the driver of an auto-truck, injured at a crossing of a street by switch tracks, *held* not slight as compared with that of those moving cars on the tracks, within the meaning of Rev. St. Neb. 1913, § 7892, permitting recovery where plaintiff's negligence was slight and defendant's was gross in comparison, and a verdict for defendant *held* properly directed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Slight Negligence.]

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by the Gordon Fireproof Warehouse & Van Company against Walker D. Hines, Director General of Railroads. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank H. Gaines, of Omaha, Neb. (Gaines, Ziegler, Van Orsdel & Gaines, of Omaha, Neb., on the brief), for plaintiff in error.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely and Paul S. Topping, both of Omaha, Neb., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. [1] On September 23, 1918, an auto-truck driven by William Kimball easterly on Webster Street in the city of Omaha collided with a freight car which, with three other cars, was being pushed across the street from the north by an engine, all then in the possession of and operated by the Director General of Railroads. The engine and cars were moving at a speed of from four to six miles an hour. The truck struck the car on its side near its southerly end, and the impact was with such violence as to bend the iron step under the side of the car inward under the car in the direction in which the

truck was going, and to cast Kimball out onto the street, whereby he was seriously and permanently injured. The truck belonged to the plaintiff in error, but had been driven by Kimball for several months as an employé, and under a state statute the employer was authorized to bring and maintain this action for damages in his behalf. It charged that the engine and cars were being moved at rapid speed, that there was no lookout on them to give warning of approach, failure to place a watchman at the crossing, failure to give warning by sounding the whistle or ringing the bell on the engine, and by placing a string of cars on a track alongside to the west, so that Kimball's view was obstructed; all of which were relied on as actionable negligence. The answer admitted the collision and injury, which it charged were due soley to the negligence and carelessness of Kimball. The court admitted the testimony on both sides, and sustained the defendant's motion for a directed verdict on the ground that Kimball's testimony disclosed that—

"He either saw the approaching cars, as he said at one place in his testimony that he saw them coming and tried to run across, or he failed to see them with the opportunity that he had to see them * * * because he ought to have looked at a place where looking would have been of some avail."

Webster Street runs east and west. It is sixty feet wide between curbs and is brick-paved. Several railway tracks, used for switching, loading and unloading freight and storing cars, cross it at right angles about the place of the accident, one of which is to the west of the track on which the engine and cars were moving, the distance between them being approximately twenty-five feet. There were standing freight cars on the westerly track north of Webster Street. Kimball testified that the south end of this string of cars extended about half a car length into the street, but the clear weight of the evidence showed it to be not farther south than the north line of the sidewalk on the north side of Webster Street. He was familiar with this crossing; he had been passing it three or four times a day, and on some days more than that. On this occasion he came from the west. He did not stop. He testified:

"I was about five feet away from the west track when I slowed down. I slowed down to less than eight miles an hour. I couldn't tell just how much I slowed down, and when I saw the train coming I tried to run across. I didn't look to the north after getting on the first track,—that is the west track, but I did look before I had started across. I never saw the string of cars involved in this collision at all, and I do not remember the collision. I didn't even know what hit me. I do not remember being struck, and have no memory of any kind from the time I got on the first track until I came to and somebody gave me a drink of water."

He further testified that when he slowed down he looked and listened but did not see or hear approaching cars, that he could not see on the second track at all when he looked to the north after slowing down, and "even if I had looked after my automobile was on the first track, I could not have seen north very far, because of the cars sticking out there" (the string of cars standing on the west track just north of Webster Street). The truck, as it traveled eastward, was well to the

south side of Webster Street up to the time of the collision. The trainmen and several bystanders testified that the bell on the engine was ringing while it was pushing the four cars southward, and there was substantial testimony from bystanders, without serious contradiction, that the truck was going at a speed of about fifteen miles per hour when it struck the car. Photographs and plats of the locality demonstrate that one standing on the west track in the center of Webster Street had an unobstructed view of two or three hundred feet northward along the second track on which the cars and engine were moving, even though the string of cars to the north projected a half-car length into Webster Street, as claimed by Kimball, and that at a point five feet west of the west track the moving cars could have been seen before they reached the street. No claim is made,—and there is no evidence to support it if made,—that those in charge of the engine and four cars knew of the impending collision in time to have avoided it.

The assignment of errors all go to the action of the court in directing a verdict for the defendant.

The proof left no escape from the conclusion announced by the trial court, that Kimball failed to exercise any care whatever for his own safety. He knew the locality and that trains were moved from time to time on the tracks crossing Webster Street. Regard for his own safety necessarily warned him against collision with them. His statement about it, in view of the situation and the surrounding circumstances at the time of the accident, convinces us, as it did the trial court, that he either did not look at all for approaching cars, and hence his own negligence in failing to do so contributed directly to the injury, or else, if he did look, he must have seen the cars moving toward and across Webster Street, and so seeing them tried, as he testified, to run across ahead of the moving train and was unable to do so, which likewise must be held to be, in that event, contributory negligence. As said by this court in a case wherein it appeared that a pedestrian walked in front of an oncoming train at a street crossing, in the first instance he would be guilty of inexcusable negligence, and in the second of inexcusable recklessness. Railway Co. v. Munger, 168 Fed. 690, 94 C. C. A. 176. See, also, to the point Tramway Co. v. Cobb, 164 Fed. 41, 90 C. C. A. 459; Grimsley v. Railway Co., 187 Fed. 587, 109 C. C. A. 417; Brommer v. Railway Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Railway Co. v. Rossow, 117 Fed. 491, 54 C. C. A. 313; Railway Co. v. Bennett, 181 Fed. 799, 104 C. C. A. 309; Ill. Cent. R. R. Co. v. Ackerman, 144 Fed. 959, 76 C. C. A. 13; Northern Pacific R. R. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Railway Co. v. Tripp, 220 Fed. 286, 136 C. C. A. 302.

[2] Plaintiff seeks to escape the principle announced in the foregoing cases by the contention that under the comparative negligence statute of Nebraska it was the duty of the court to submit to the jury the issues of negligence on the part of Kimball and the defendant, and leave to it the determination of whether Kimball's negligence was slight and the defendant's gross, and if it had so determined the plaintiff would have been entitled to recover damages. The state statute permits a recovery "when the contributory negligence of the plaintiff was

slight and the negligence of the defendant was gross in comparison." Section 7892, Neb. Stat. 1913. The Supreme Court of that state has held, in Askey v. Ry. Co., 101 Neb. 266, 162 N. W. 647, that one who was killed at a crossing under somewhat analogous circumstances, in part, was guilty of "more than a slight negligence as a matter of law"; and we are of like opinion as to the acts of Kimball under the facts here We put aside the inquiry as to just what is meant by gross negligence. We are not advised that the highest court in the State has given the word "gross," as used in the statute, a definite meaning; and hence we regard it as a mere epithet. Purple v. Ry. Co., 114 Fed. 123, 130, 51 C. C. A. 564, 57 L. R. A. 700; Oregon Co. v. Roe, 176 Fed. 715, 718, 100 C. C. A. 269. But assuming that there are degrees of negligence under the Nebraska statute, that ordinarily may be left to the jury for determination; still there are no facts that would justify and support a finding that the negligence, if any, of defendant was greater than that clearly established on the part of Kimball. Obviously, then, plaintiff failed to make a case within the requirements of the statute.

Affirmed.