## MILLER v. CANADIAN NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. June 2, 1922.)

No. 5614.

1. **Negligence** ⊂⇒136(5)—**Verdict directed on clear proof.**

If, at the close of the trial of the question of the negligence of the defendant and the contributory negligence of the person injured, the evidence so clearly discloses the fact that the latter was guilty of negligence which directly contributed to his injury that a finding to the contrary could not be rightly sustained by the trial court, it is its duty to instruct the jury to return a verdict for the defendant.

2. **Master and servant** ⊂⇒247(1)—**Brakeman throwing wrong switch held guilty of negligence directly contributing to his injury by engine.**

Where an experienced brakeman, having exclusive direction of switching operations, threw a wrong switch, which opened the wrong track, and, thinking that he had opened the right one, signaled the engineer to move forward, and without looking behind him walked on the track he had opened, and was struck by the engine coming without the customary ringing of the bell, but with the headlight lighting the track ahead of him about as bright as day, *held*, that he was guilty of negligence directly contributing to his injury.

3. **Negligence** ⊂⇒82—**Test of contributory negligence stated.**

In a case of alleged contributory negligence, the question is not whether the negligence of plaintiff or that of defendant was the more proximate cause of the injury, but it is whether the negligence of the injured person directly contributed to cause it.

4. **Master and servant** ⊂⇒139—**Absence of bell signal held not proximate cause of injury to switchman sending engine on wrong track.**

Where plaintiff, an experienced brakeman directing switching operations, threw a wrong switch, which opened the wrong track, and, thinking that he had opened the right one, signaled the engineer and walked ahead on the track he had opened, without looking back to see where the engine was coming, *held*, that the engineer's failure to ring the bell, as was customary, and his failure to stop his engine before he struck plaintiff, was not either the proximate or contributory cause of the injury.

5. **Negligence** ⊂⇒83—**Last clear chance doctrine stated.**

The last clear chance doctrine is limited to cases in which the defendant actually discovers the person injured and his peril in time to avoid the injury, and does not include cases where by the exercise of ordinary care the defendant might have made such a discovery in time to avoid the injury.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by Oscar O. Miller against the Canadian Northern Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Humphrey Barton, of St. Paul, Minn. (M. F. Harrington, of O'Neill, Neb., on the brief), for plaintiff in error.

Michael J. Doherty, of St. Paul, Minn. (Pierce Butler and William D. Mitchell, both of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and VAN VALKENBURGH, District Judge.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANBORN, Circuit Judge. This writ of error challenges the direction of the jury by the court below to return a verdict for the defendant railway company at the close of the evidence in the trial of an action by Mr. Miller, the plaintiff, for damages from a personal injury which he alleged was caused by the negligence of an engineer of the defendant in operating an engine, which struck and broke his leg. The defendant denied the negligence, and alleged that the plaintiff was guilty of negligence which directly contributed to his injury. The only question in this court, therefore, is whether or not the evidence was such that the trial court, in the exercise of its judicial discretion under the established rules of law on this subject, could have rightly sustained a verdict for the plaintiff, if such a verdict had been rendered.

[1] If, at the close of the trial of the question of the negligence of the defendant and the contributory negligence of the person injured, the evidence so clearly discloses the fact that the latter was guilty of negligence which directly contributed to his injury that a finding to the contrary could not be rightly sustained by the trial court, it is its duty to instruct the jury to return a verdict for the defendant. Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361; Chicago Great Western Ry. Co. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470; Western Union Telegraph Co. v. Baker, 140 Fed. 315, 319, 72 C. C. A. 87.

[2] These were the material facts disclosed by the evidence: The plaintiff was a brakeman of many years' experience, who for four months prior to December 12, 1916, had been running on a mixed train, which passed daily between Big Valley and Vegreville, in the province of Alberta, Canada, on the railroad of his employer, the defendant below. About 6 o'clock in the morning of that day, while it was still dark and very cold, he was engaged at Vegreville, with the engineer, fireman, and another brakeman, in making up his train to go to Big Valley. In order to make it up, it was necessary to gather into it many cars located on different tracks in the railroad yards and to move other cars in order to reach them. The plaintiff had the switching list, the numbers of the cars his crew were to put into the train and take out on their trip, and he had exclusive charge and direction of the switching, of the movements of the engine and cars, and of the acts of the engineer, the fireman, and the other brakeman in making up the train. There were in the yard a main line track, and, north of this track, three side or switching tracks, known as 1, 2, and 3. These tracks extended in a general easterly and westerly direction. The plaintiff had been running in this crew with Engineer Frazer between the two stations mentioned for four weeks, and was well acquainted with him and his methods of doing his work. They were using a road engine headed east, equipped with a powerful electric headlight, which was lighted. The method pursued in getting the cars together in the train was that the plaintiff would find the cars to be taken from the various tracks by means of his switching list, turn the switches, and by signals and orders direct the engineer when and in which direction to move his engine and when and where to stop. After they had taken

in this way eight cars from track 2 to track 1, uncoupled and left four cars there to go in the train, and taken the other four cars onto track 2 and uncoupled them, the plaintiff intended to get some cars on track 3 and put them into the train. In order to do this it was necessary to move the engine westerly until it had passed off of track 2, then to throw the switch which would open track 3, and move the engine easterly onto track 3 in order to couple to the cars there. To do this the plaintiff signaled the engineer to move westerly, got onto the pilot of the engine, and rode until he arrived at the switch which opened track 1, signaled the engineer to stop, and he stopped, threw the switch which opened track 1, so that if the engine moved easterly it would go onto track 1. signaled the engineer to move easterly, and walked easterly between the rails of track 1 in front of the engine about 300 feet, when the engine struck and injured him. The plaintiff had opened track 1, when he thought he had opened track 3, and he had walked on track 1, when he thought he was walking on track 2. He did not look around behind him to see where the engine was, or where it was going, between the time he signaled the engineer to move it easterly and the time it struck him. As he rode out from track 2, he had passed within 10 feet of the switch stand which opened the way into track 3. As he walked along track 1 in front of the engine, the headlight behind him lighted the track and yard "about as bright as day." The plaintiff had been accustomed to walk in front of the engine, and when it would catch up with him to catch onto the side step on the side of the cab of the engine as it passed by, and he had been working with Engineer Frazer for a month, so that they both knew of this practice. It was customary for the engineer to ring the bell when signaled to move his engine and while engaged in switching, but he did not ring it when he was signaled to move easterly onto track 1, or after that before his engine struck the plaintiff. There were a few other facts established by the evidence, but none which can affect the conclusions and decision those that have been cited compel.

[3] The court below directed the jury to return a verdict for the defendant on the ground that the evidence conclusively proved that the plaintiff was guilty of negligence which directly contributed to his injury. It was his duty to direct the movements of the engine and the acts of the engineer, and he did so. It was his duty to throw the right switch, and he threw the wrong one. He had the switching list and knew what movements were necessary, and he alone was responsible for sending the engine along track 1 and for walking along on that track in front of it. It is impossible to hold that his acts in throwing the wrong switch, in sending the engine on the wrong track, and in placing himself in front of it on that track, were the discharge of his duty with reasonable care. The yard and the tracks were about as bright as day, he was familiar with them, and if he had made the use of his eyes and ears, as he walked the 300 feet in front of the engine, that a man of ordinary prudence would have made under such circumstances, he could not have failed to learn that he and the engine were on the wrong track, and that he would be injured unless he kept out of the way of the coming engine, and he would have kept out of its way and have escaped

the injury, if he had discharged with reasonable care his duty to send the engine on the right track or to go on a different track himself, or if, while he walked along track 1, he had used reasonable care to discover which track he and the engine were on, and how near the engine was approaching him, he would have learned of his danger and escaped his injury.  The effect of his negligence in these regards continued until the injury was inflicted.  And there is no logical or reasonable way of escape from the conclusion of the court below that his negligence in these regards directly contributed to his injury and, as the question here is not whether the negligence of the plaintiff or that of the defendant was the more proximate cause of the injury, but whether or not the negligence of the injured person directly contributed to cause it (Marshall v. Hines, Director General of Railroads [C. C. A.] 271 Fed. 165, 169, and cases there cited), the question whether or not the defendant or its engineer was negligent becomes immaterial, and there was no error in the direction to the jury to return a verdict for the defendant.

[4] Nor, if we look further, does the evidence prove or persuade that the alleged negligence of the engineer which counsel urges contributed to the injury.  That negligence was (1) the failure of the engineer to ring the bell, as customary, when he started and while he continued to move his engine in obedience to the plaintiff's signal easterly on track 1 : and (2) his failure to stop his engine before it struck the plaintiff as the latter walked easterly before him in plain sight on track 1.  The plaintiff testified that after he threw the switch which sent the engine down track 1 he looked at the track and at the points to see if there was any snow on them and as follows:

"Q. You didn't look to see whether the engine would go down No. 1 or go down the lead?  A. No, sir;  I didn't, because there was no doubt about it in my mind.

"Q. Yet you looked down at the track;  did you look around?  A. I did.

"Q. From the time you started until the engine struck you, did you ever look back at the engine?  A. Not after I gave the signal to come ahead."

Thus the facts appear that he knew and was so sure that the engine was coming down track 1, when he went upon and walked upon that track, that he would not look to see whether it was coming or not, and the unavoidable inference is that, if the engineer had rung the bell, as customary, that ringing would not have changed his mind and led him to look back to see where the engine was coming, but would merely have confirmed his sure knowledge that it was coming down track 1 behind him, a fact which there was no doubt about in his mind.  Thus the facts appear from the evidence that the absence of the ringing of the bell could not have been either the proximate or a contributory cause of the plaintiff's injury;  hence it would not have supported a verdict for the plaintiff.

[5] But counsel insist that the plaintiff was entitled to recover under the last clear chance rule.  That rule is not that, if the defendant or its engineer saw or could by the exercise of ordinary care have seen the plaintiff and realized his imminent danger in time to stop the engine before it struck him, the defendant is liable for the ensuing injury. That doctrine or exception to general rules is limited to cases in which

the defendant actually discovers the person injured and his peril in time to avoid the injury. It does not include cases where, by the exercise of ordinary care, the defendant might have made such a discovery in time to avoid the injury. Marshall v. Hines (C. C. A.) 271 Fed. 165, 170, and cases there cited. There is no evidence in this case that the defendant or its engineer ever actually discovered the plaintiff's peril before the engine struck him, nor is there any substantial evidence that an engineer of common ability and prudence in the situation of Mr. Frazer, the engineer in this case, in the exercise of ordinary care would have discovered the plaintiff's peril before the engine struck him. It was the duty of the engineer to move his engine when and where the plaintiff directed him to move it, and he did so. So far as the evidence discloses, the plaintiff was the only one who knew what cars were to be taken from the side tracks and put into the train, and the engineer did not know that the plaintiff did not intend to send the engine and to walk before it along track 1. He had the right to rely upon the presumption that the plaintiff had made no mistake, that the plaintiff knew that he had ordered the engine to follow him along track 1, and that he was walking in front of it with full knowledge of the situation. The plaintiff testified that he had made two mistakes—that he had sent the engine along track 1 when he intended to send it and thought he had sent it along track 3, and that he had sent himself and was walking along track 1 when he intended to send himself and thought he had sent himself along track 2, so that the engine would pass him. But the engineer had no knowledge or reason to believe that the plaintiff had made these mistakes.

The plaintiff testified that it was a common practice of switchmen after they threw a switch to walk ahead of the engine until it caught up with them, and then step on the footboard and ride along, but that the engine in this case had no footboard and that when he was going in the same direction as the engine he would walk along in front of it until it caught up with him, and then ordinarily catch the side step located at the side of the cab of the engine as it passed by. He also testified that the engine stopped 35 or 40 feet from the place where it struck him, and that he picked himself up by the ladder along the side of the engine and started to get up, and then found his leg was broken. Conceding that the engineer saw the plaintiff as he walked along in front of the engine, he also knew that it was the common practice of switchmen so to do and the ordinary practice of the plaintiff so to walk, and as the engine caught up with him and passed to step to one side catch the side step on the side of the cab and ride. The engine was moving so slowly that it stopped in 35 or 40 feet farther when it struck the plaintiff, and there was nothing in the situation before it struck him, in the position of the plaintiff, in the speed of the engine or in the other circumstances to lead a man of ordinary prudence to think or to believe that the plaintiff was in any peril, that he would not follow his ordinary practice and step off the track as the engine was about to catch up with him.

The natural inference from the former practice of the plaintiff, from the situation and the circumstances, was that he intended to step to the

side of the track when the engine reached him, catch the side step as it passed and ride. Neither the defendant nor the engineer, even though the latter saw the plaintiff walking on the track on which the engine followed him, was required to stop the engine or otherwise act to prevent the plaintiff's injury, or was guilty of any negligence unless, before the accident and in time to have prevented it, a man of average prudence in his situation would have discovered that the plaintiff was in imminent danger of injury. But such a man would have presumed and would have been warranted in presuming that the plaintiff would step off the track when the engine came near him and before it could touch him, and in that belief he would have been guilty of no negligence in failing to act to prevent the injury which would have been contrary to all reasonable expectation on his part, and doubtless was so on the part of the engineer. Little Rock Ry. & Electric Co. v. Billings, 173 Fed. 903, 907, 908, 98 C. C. A. 467, 31 L. R. A. (N. S.) 1031, 19 Ann. Cas. 1173; St. Louis & San Francisco Ry. Co. v. Summers, 173 Fed. 358, 360, 97 C. C. A. 328; Illinois Central Ry. Co. v. Ackerman, 144 Fed. 959, 961, 962, 76 C. C. A. 13; Denver City Tramway Co. v. Cobb, 164 Fed. 41, 42, 43, 90 C. C. A. 459.

The accident which resulted in the plaintiff's injury occurred in the province of Alberta, Canada, and the evidence of the law of that country conditioning the liability of the defendant for the damages resulting from the injury appears in the record and has been examined. While some of the rules of law of Canada regarding this liability differ in some respects from those which prevail in this country and have been stated, the difference is not sufficient to sustain a verdict on the evidence in this case in favor of the plaintiff under the laws and rules enforced in Alberta, Canada, and for that reason a discussion of them is omitted.

The judgment below must be and it is affirmed.