## ALLNUTT v. MISSOURI PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. September 30, 1925.)

No. 6967.

**1. Railroads ⟨⟩312(3)—Ordinary care to sound warnings required.**

It is duty of railroad company to exercise ordinary care to sound usual warnings as train approaches crossing.

**2. Railroads ⟨⟩350(7)—Conflicting testimony as to warning held for jury.**

In action for personal injuries sustained at a railroad crossing where there was conflicting evidence as to whether company had fulfilled its duty in sounding usual warnings, question was one for jury.

**3. Railroads ⟨⟩324(1)—Ordinary care required of traveler.**

It is duty of one approaching railroad crossing to exercise ordinary care for his own safety.

**4. Railroads ⚖➡327(2)—Pedestrian held guilty of contributory negligence at crossing.**

Where train was in plain sight, and pedestrian saw it when he was some distance from main track but failed to give further heed to it and deliberately crossed main track and went on switching track, he was guilty of contributory negligence.

**5. Negligence ⚖➡136(31)—Comparative negligence may be determined by court as question of law.**

Crawford & Moses' Dig. Ark. § 8575, embodying law of comparative negligence, does not provide that the question of comparative negligence must be determined by jury, or take from court right to decide such question as matter of law, where no other inference could be drawn from evidence by reasonable men.

**6. Negligence ⚖➡101—Court not in error in deciding as matter of law pedestrian's negligence at crossing was not of less degree than railroad's negligence.**

In pedestrian's action for personal injuries at railroad crossing, *held*, that trial court committed no error in deciding as matter of law that negligence of plaintiff in crossing track without looking for approaching train was not of less degree than negligence, if any, of defendant railroad company in failing to give warnings.

**7. Railroads ⚖➡338—Doctrine of last clear chance held inapplicable.**

In action for personal injuries sustained at railroad crossing, *held*, that doctrine of last clear chance as embodied in Crawford & Moses' Dig. Ark. § 8568, was inapplicable where it was shown that there was no negligence of defendant supervening subsequently to that of plaintiff, as where his negligence is continuous and operative down to time of injury, and plaintiff's negligence or position of danger was not discovered by defendant in time to avoid injury.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by J. P. Allnutt, by his next friend, Mrs. Mary P. Allnutt, against the Missouri Pacific Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Edward Gordon, of Morrillton, Ark., for plaintiff in error.

Vincent M. Miles, of Fort Smith, Ark. (Thomas B. Pryor, of Fort Smith, Ark., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is a personal injury case in which the court below directed a verdict for the defendant at the close of the evidence.

Plaintiff in error, plaintiff below, while attempting to walk across one of the switching tracks of the defendant in the afternoon of the 19th of November, 1923, at a public crossing in the city of Morrillton, Ark., was struck by an engine pulling a train, and was injured.

Plaintiff alleged in his complaint that the defendant negligently failed to ring the bell or blow the whistle as the engine approached the crossing; negligently failed to keep a lookout for persons upon the track as required by the state statutes. The answer denied negligence on the part of the defendant, and alleged contributory negligence on the part of the plaintiff.

The public street ran north and south. The railroad ran east and west. Two tracks crossed the street—the main track and the passing or switching track. The main track was about 6 or 7 feet south of the passing track. Plaintiff was walking north on the public street. The train, consisting of an engine and three cars, was going west. Plaintiff, a man over 70 years of age, was familiar with the crossing. He passed over it four times a day. There was nothing to obstruct his view in the direction from which the train came. Switching movements were frequent at this point on the company's tracks. Plaintiff could hear well with his right ear, which was the one toward the train. His eyesight was good.

There was a conflict in the testimony on the question whether the bell was rung as the engine approached the crossing. The evidence is undisputed, however, that plaintiff saw the train when he was some 50 feet away from the railroad track; he testified, however, that he thought it was standing still. His testimony as to how the accident happened is as follows: "I saw the train when I first got to the crossing, and it was standing still down about the switch, and I paid no attention to it, and Mr. Morrell walked with me, and I had crossed the main track, I think, but wouldn't be sure about that, but at any rate he saw a negro coming down on the other side, going south, and he says, 'There is a negro I want to see,' and he just walked off across the street over on the other crossing, or started that way, and I went on across the main track. I didn't hear anything, and I thought the train was standing still down there, and I was turned around that way looking toward Morrell, to see if he was going to see his negro, and about that time the train hit me, and that is the last I can tell you, and I don't remember anything more." Plaintiff was asked the question, "From the time you noticed this train, from the time you were back 50

feet, back from the track, did you ever look back in the direction from which this train was coming? * * * A. No, I don't think I did." The fireman testified that he was on the lookout; that when the engine was 30 to 50 feet from the crossing, he saw the plaintiff going north about the center of the main-line track; that when he saw that plaintiff continued toward the switching track, he hollered to him; that as soon as he hollered at the plaintiff, the engineer applied the emergency brake; that the bell was ringing at the time; that the engine was going about 7 or 8 miles an hour. The engineer corroborated the testimony of the fireman, and further testified that the train was running about 8 miles per hour and stopped in about 25 feet; that he applied the emergency brake and stopped the train as soon as he could after the fireman shouted. There was other testimony that plaintiff went upon the side track without apparently paying any attention to the approaching engine.

[1, 2] The law applicable to this state of facts is well settled. It was the duty of defendant company to exercise ordinary care to sound the usual warnings as the train approached the crossing. Inasmuch as the testimony was conflicting whether this duty was fulfilled, the question was one for the jury.

[3, 4] It was the duty of plaintiff to use ordinary care for his own safety as he approached the crossing. The train was in plain sight. He saw it when he was some distance from the main track. He failed to give further heed to it, but deliberately crossed the main track and went upon the switching track. He was clearly guilty of contributory negligence. Elliott v. C., M. & St. P. Ry. Co., 150 U. S. 245, 14 S. Ct. 85, 37 L. Ed. 1068; C. G. W. Ry. Co. v. Smith, 141 F. 930, 73 C. C. A. 164 (C. C. A. 8); Denver City Tramway Co. v. Cobb, 164 F. 41, 90 C. C. A. 459 (C. C. A. 8); Payne v. Blevins (C. C. A.) 280 F. 310.

[5, 6] Plaintiff, however, invokes the doctrine of comparative negligence. Section 8575, Crawford & Moses' Digest of the Statutes of Arkansas, reads as follows: "In all suits against railroads, for personal injury or death, caused by the running of trains in this state, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

In Bradley v. Missouri Pacific R. R. Co., 288 F. 484, this court, in passing upon the statute in question said: "The statute does not provide that this question of comparative negligence must be determined by a jury, and does not attempt to take from the court the right, where no other inference can be drawn from the evidence by reasonable men, to decide as a question of law that the evidence of negligence on the part of decedent equaled or exceeded that of the railroad company." The Arkansas decisions are not to the contrary. St. Louis-San Francisco Ry. Co. v. Horn, 269 S. W. 576.

We think the trial court committed no error in deciding as a matter of law that the negligence of plaintiff was not of less degree than the negligence, if any, of the defendant.

[7] The "last clear chance" doctrine is also relied upon by plaintiff. In Arkansas this doctrine is embodied in a statute. Section 8568 of Crawford & Moses' Digest. It reads as follows: "It shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

This doctrine is not applicable to the facts in the case at bar.

In the case of Denver City Tramway Co. v. Cobb, supra, which involved a similar state of facts, this court said: "It is also urged that the case is within that exception to the general rule making contributory negligence a defense, which is known as the 'last clear chance doctrine.' But there are two reasons why that is not so: First. The exception does not apply where there is no negligence of the defendant supervening subsequently to that of the plaintiff, as where

his negligence is continuous and operative down to the moment of the injury. [Citing cases.] Second. The exception does not apply where the plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury. [Citing cases.]"

The instant case did not come within the doctrine mentioned, because of both of the reasons above mentioned. See, also, Little Rock Ry. & Elec. Co. v. Billings, 187 F. 960, 110 C. C. A. 80 (C. C. A. 8); A., T. & S. F. Ry. Co. v. Taylor, 196 F. 878, 116 C. C. A. 440 (C. C. A. 8); Iowa Cent. Ry. Co. v. Walker, 203 F. 685, 121 C. C. A. 579 (C. C. A. 8); Marshall v. Hines, 271 F. 165 (C. C. A. 8); Miller v. Canadian No. Ry. Co., 281 F. 664 (C. C. A. 8); Illinois Cent. R. Co. v. Ackerman, 144 F. 959, 76 C. C. A. 13 (C. C. A. 8).

The Arkansas decisions are in accord with the foregoing cases. Blytheville L. & A. So. Ry. Co. v. Gessell, 158 Ark. 569, 250 S. W. 881.

One of the assignments of error relates to the failure of the trial court to remand the case to the state court whence it had been removed. Though this assignment of error was not pressed upon the oral argument, we have examined the questions involved and find no error in the ruling of the court denying the motion to remand.

Judgment affirmed.