**WHEELOCK et al. v. CLAY.**

(Circuit Court of Appeals, Eighth Circuit. June 5, 1926.)

No. 7111.

**I. Negligence ⊚⟹83.**

Last clear chance doctrine presupposes negligence and contributory negligence, and constitutes exception to general rule making contributory negligence defense.

**2. Negligence ⊚⟹83—Doctrine of last clear chance does not apply, where no negligence of defendant occurs after that of person injured.**

Doctrine of last clear chance does not apply, where no negligence of defendant supervenes subsequent to that of person injured, as where his negligence is continuous and operative down to moment of injury.

**3. Negligence ⊚⟹83—For last clear chance doctrine to apply, defendant must have actually discovered peril in time to avoid injury.**

Last clear chance doctrine is limited to cases where defendant actually discovers the person and his peril in time to avoid injury; it not being enough that by ordinary care discovery might have been in time.

**4. Railroads ⊚⟹338.**

Collision of train with team at crossing, where cars were standing on two other tracks, *held* clearly one of concurrent negligence, so that last clear chance doctrine does not apply.

**5. Railroads ⊚⟹338.**

Testimony *held* to furnish no substantial evidence necessary for application of last clear chance doctrine, that engineer actually saw driver of team in position of peril in time to avoid accident.

**6. Witnesses ⊚⟹402.**

Under Missouri practice, while plaintiff may not impeach his witness, he is not concluded by his testimony, but may establish his case by testimony of others contradictory thereof.

**7. Trial ⊚⟹141, 143.**

Verdict should be directed, where evidence is undisputed, or, though conflicting, is of so conclusive a character that court, in exercise of sound discretion, would set aside verdict in opposition to it.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by Fannie Clay against William W. Wheelock and another, receivers of the Chicago & Alton Railroad Company. Judgment for plaintiff, and defendants bring error. Reversed, with instructions.

Charles M. Miller, of Kansas City, Mo., for plaintiffs in error.

Robert A. May, of Louisiana, Mo. (Rendlen & White, of Hannibal, Mo., Frank J. Duvall, of Clarksville, Mo., and May & May, of Louisiana, Mo., on the brief), for defendant in error.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. Defendant in error, plaintiff below, sued to recover damages for the death of her husband, alleged to have been caused on the 8th of August, 1923, by the negligence of the defendants, receivers of the railroad company. The case was brought originally in the state court of Pike county, Mo., but was duly removed on the ground of diverse citizenship. At the close of all the evidence, defendants moved for a

directed verdict. The motion was denied. Plaintiff recovered a judgment.

The sole question raised by the assignments of error is whether the court erred in denying the motion for a directed verdict. There was evidence tending to establish the following facts:

The accident happened at the Fritz Crossing, near Louisiana, Pike county, Mo. The railroad at this point ran approximately east and west; the highway, north and south. There were three tracks, parallel to each other, crossing the highway. The northerly of the three was the main track, the next southerly was the passing track, and south of that was the storage track. On the day of the accident the passing track was occupied, west of the highway, by a string of hopper cars. Cars were also standing on the storage track. These cars extended into the highway to a point about 7 or 8 feet distant from the traveled part thereof. The train which caused the accident was going east. It consisted of an engine, tender, and four cars, and was about 350 feet in length. As it approached the crossing, and before the brakes were applied, it was running about 40 miles per hour. Signals for the crossing were given. Mr. Clay was driving a pair of horses attached to an empty gravel wagon, going northerly toward the railroad crossing; the horses were walking at a speed estimated to have been 200 feet per minute. As he approached the tracks, his view toward the west was obstructed by the cars on the storage track and by the hopper cars on the passing track. A boy was sitting upon the hopper car nearest the highway. He saw the train approaching, and heard the signals, and tried to warn Mr. Clay. No attention was paid to his warning. The engineer of the train saw the horses when they emerged from behind the hopper cars. He applied the emergency brakes, but a collision occurred, and Mr. Clay was killed. The court instructed the jury that Mr. Clay was guilty of contributory negligence as a matter of law, but submitted the case to the jury on the theory of the "last clear chance doctrine." The main question presented to this court is whether the evidence was such as to warrant its submission to the jury.

[1-3] The "last clear chance doctrine" presupposes negligence on the part of the defendant, and contributory negligence on the part of plaintiff (A., T. & S. F. Ry. Co. v. Taylor [C. C. A. 8], 196 F. 878, 116 C. C. A. 440), and is an exception to the general rule making contributory negligence a defense (Denver City Tramway Co. v. Cobb [C. C. A. 8] 164 F. 41, 90 C. C. A. 459). There are limitations, however, to the application of the doctrine. In the case last cited, this court said:

"First. The exception does not apply where there is no negligence of the defendant supervening subsequently to that of the plaintiff, as where his negligence is continuous and operative down to the moment of the injury. St. Louis & San Francisco Ry. Co. v. Schumacher, 152 U. S. 77, 81, 14 S. Ct. 479, 38 L. Ed. 361; Illinois Central R. Co. v. Ackerman, 76 C. C. A. 13, 144 F. 959; Missouri Pacific Ry. Co. v. Moseley, 6 C. C. A. 641, 57 F. 921; Gilbert v. Erie R. Co., 38 C. C. A. 408, 97 F. 747. Second. The exception does not apply where the plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury. Chunn v. City & Suburban Ry. Co., 207 U. S. 302, 309, 28 S. Ct. 63, 52 L. Ed. 219; Illinois Central R. Co. v. Ackerman, supra; Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 451, 74 N. W. 166, 70 Am. St. Rep. 341; Alger, Smith & Co. v. Duluth, etc., Co., 93 Minn. 314, 101 N. W. 298; Bennichsen v. Market St. Ry. Co., 149 Cal. 18, 84 P. 420; Cullen v. Baltimore & P. R. Co., 8 App. D. C. 69; Rider v. Syracuse Rapid Transit Co., 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125; Chicago, R. I. & P. Ry. Co. v. Crisman, 19 Colo. 30, 34 P. 286; Denver & R. G. R. Co. v. Spencer, 25 Colo. 9, 52 P. 211; Cooley on Torts (3d Ed.) 1442–1445; 3 Elliott on Railroads (2d Ed.) § 1175."

See Little Rock Ry. Co. v. Billings (C. C. A. 8), 187 F. 960, 110 C. C. A. 80; Iowa Central Ry. Co. v. Walker (C. C. A. 8) 203 F. 685, 121 C. C. A. 579; Allnutt v. Mo. Pac. R. Co., 8 F.(2d) 604 (C. C. A. 8).

The doctrine is limited in this court to cases in which the defendant actually discovers the person injured and his peril in time to avoid the injury, and does not include cases where by the exercise of ordinary care defendant might have discovered the person injured in peril in time to avoid the injury. Marshall v. Hines, 271 F. 165 (C. C. A. 8); Miller v. Canadian Nor. Ry. Co., 281 F. 664 (C. C. A. 8).

[4] In the instant case counsel for plaintiff contends that the following facts, additional to those above stated, were disclosed by the testimony: That Mr. Clay in the wagon had reached the north rail of the main track when the engine hit the wagon; that Mr. Clay was driving at a rate of 200 feet per minute, which would be 2.27 miles per hour; that, if Mr. Clay had had time to go 3 feet more, the accident would not have happened. Assuming these to be the facts, and assuming the

truth of the testimony of plaintiff's witness who saw the accident that Mr. Clay paid no attention to the signals of the engineer, nor to the shouts of warning of the witness, until he reached a point about on the north rail of the north track, when he heard either the train or the shout, and got up and started to jump, it is apparent that the negligence of Mr. Clay continued down to the time of the accident. Had he looked, he could have seen the train as soon as he emerged from behind the hopper cars. He could then have urged his horses, which were going only 2.27 miles per hour, and thus in all probability have gained the 3 feet necessary to his safety; or he could have dismounted from his wagon before he got upon the railroad track. He made no effort to do either. His negligence was continuous and operative down to the time of the accident. Assuming that defendants were negligent, the case is clearly one of concurrent negligence, and the doctrine of "last clear chance" does not apply. St. Louis, etc., Ry. Co. v. Schumacher, 152 U. S. 77, 81, 14 S. Ct. 479, 38 L. Ed. 361; Illinois Central R. Co. v. Ackerman (C. C. A. 8) 144 F. 959, 962, 76 C. C. A. 13.

[5] We are also of the opinion that the "last clear chance doctrine" does not apply, because there is no substantial evidence in the record that the engineer actually saw Mr. Clay in a position of peril in time to avoid the accident. The engineer was called as a witness by plaintiff. He testified as follows: That he had been a locomotive engineer for 25 years on the Chicago & Alton Railroad; that the train which caused the accident consisted of an engine weighing 136,000 pounds, and 4 cars, 2 baggage, 1 combination, and 1 coach; that the train was equipped with the usual Westinghouse brake system, and that the appliances were in good order; that the train was running about 40 miles per hour and was on time; that as the train approached the crossing, and when about a quarter of a mile distant he gave the usual crossing whistles, two long and two short; that when about 400 feet from the crossing he commenced to give the crossing whistles again, as required by the rules of the company; that as he began to give the second long whistle, he saw the horses emerge from behind the hopper cars standing on the passing track; that he then let go of the whistle with his left hand, and seized the brake valve, and pushed it into emergency position, and grabbed the whistle with his right hand; that he was 100 to 120 feet from the crossing when he saw the horses; that it took about 2 seconds for the force of the brakes to be felt; that the train was stopped in about 525 feet after the application of the emergency brakes; that there was nothing else that he could do, to stop the train besides what he did.

[6] This testimony, given by a witness for plaintiff, if standing alone, would clearly show that the "last clear chance doctrine" had no application. Under Missouri practice, however, while a party may not impeach his own witness, yet he is not concluded by the testimony of such witness, but may establish his case by the testimony of other witnesses, though it be contradictory to the testimony of the first witness. Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1165; Burton v. Railroad, 176 Mo. App. 14, 162 S. W. 1064. It was sought by plaintiff's counsel to overcome this testimony of the engineer in the following way: The 12 year old boy who saw the accident testified that Mr. Clay's horses, as they approached the railroad track, were walking "about like they usually did." Another witness testified that he knew Mr. Clay's horses, and that they ordinarily moved at "the usual work team gait." Still another witness testified that the usual gait of a team hitched to a gravel wagon was about 200 feet per minute.

From this testimony the conclusion is drawn by counsel that Mr. Clay's team, as it went across the tracks, was going at the rate of 200 feet per minute, or 3½ feet per second. Next it is calculated that it took 8 seconds for Mr. Clay's team to go from the point where the noses of the horses appeared from behind the hopper cars to the point at which Mr. Clay was in the center of the main track, a distance of 23 feet 3 inches. From this calculation, coupled with the testimony that the train was going at the speed of 40 miles per hour, the conclusion is drawn that the engineer must have been 469 feet from the crossing when he saw the horses emerge from behind the hopper cars.

From the testimony of a witness that the character of the whistle signals, given at the point about 400 feet distant from the crossing, was unusual, the conclusion is drawn that the engineer must in any event at that point have seen Mr. Clay's perilous position. Finally, from the testimony of two witnesses, who at one time had operated locomotive engines, the conclusion is drawn that the train could have been stopped in from 350 to 400 feet.

From this concatenation of assumptions and deductions the final conclusion is sought to be drawn that the engineer did not use reasonable care after he discovered the perilous position of Mr. Clay. We think the reason-

ing is faulty, as is also the mathematics. The conclusion that the team of Mr. Clay was traveling at the uniform rate of 3½ feet per second, as it approached the crossing and until the accident happened, is an assumption of fact, and is not based on any substantial evidence. The conclusion that the engineer discovered the "noses of the horses" as soon as they emerged from behind the hopper cars, and that this was a discovery of Mr. Clay in a perilous position, is based on an assumption of fact, and is not supported by the evidence. The evidence shows that when the "noses of the horses" emerged from behind the hopper cars, Mr. Clay, seated in the wagon, was more than 20 feet from the nearest rail of the main track. The conclusion that it was the duty of the engineer to apply the emergency brakes immediately on discovering the "noses of the horses" emerging from behind the hopper cars, if such discovery was made, is based on an assumption of law which finds no support in the authorities. The peculiarity of the latter part of the signals, which were commenced at a point about 400 feet from the crossing, is fully explained by the testimony of the engineer, and in view of that explanation does not constitute substantial evidence in support of the theory of plaintiff.

The discovery of the team when it emerged from behind the hopper cars, the realization that the driver was in a perilous position, the application of the emergency brakes, were not simultaneous but sequential, and must in the nature of things have occupied several seconds of time. There is no evidence of inexcusable delay; there is no evidence of inexcusable omission. We think that the testimony of the engineer, who was plaintiff's own witness, remained practically unshaken by any other substantial evidence in the case, and that the evidence as a whole in regard to the conduct of the engineer falls far short of making a case for the application of the "last clear chance doctrine."

[7] It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion would set aside a verdict in opposition to it. Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Ewert v. Beck (C. C. A. 8) 235 F. 513, 149 C. C. A. 59; Fricke v. International Harvester Co. (C. C. A. 8) 247 F. 869, 871, 160 C. C. A. 91; New Amsterdam Casualty Co. v. Farmers' Co-op. Union of Lyons, Kan., 2 F.(2d) 214 (C. C. A. 8);

Walton Trust Co. v. Taylor, 2 F.(2d) 342 (C. C. A. 8); Kintyre Farmers' Co-op. Elevator Co. v. Midland National Bank, 2 F.(2d) 348 (C. C. A. 8); A., T. & S. F. Ry. Co. v. Wyer (C. C. A. 8) 8 F.(2d) 30. We think the instant case is within the rule stated.

Judgment reversed, with instructions to grant a new trial.